UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NICO FRANCISCO FRANCISCO,

                Petitioner,

    v.

JULIO HERNANDEZ, *et al.*,

                Respondents.

Case No. C26-890-MLP

ORDER

Petitioner Nico Francisco Francisco, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, supported by sworn declarations from himself and his counsel, asserting that his redetention by U.S. Immigration and Customs Enforcement ("ICE") violated his Fifth Amendment Due Process rights. (Dkt. ## 1-3.) Respondents filed a return supported by the sworn declaration of Deportation Officer Rita Soraghan and an unsworn declaration from their counsel, Michelle R. Lambert.[1] (Dkt. ## 7-9.) Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1).[2]

---

[1] Petitioner's reply is due April 6, 2026. (Dkt. # 5.) Because the Court finds habeas relief warranted, it is unnecessary to wait for the reply.

[2] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

ORDER - 1

## I.    BACKGROUND

Petitioner is a citizen of Guatemala whose first language is Maya-Kanjobal and whose second language is Spanish. (Francisco Decl. (dkt. # 2), ¶ 1.) He fled Guatemala at the age of 16 due to abuse by his father and death threats from gangs. (*Id.*; dkt. # 1, ¶ 28.) He entered the United States on May 3, 2022, was detained, and was issued a Warrant for Arrest pursuant to § 236 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226. (Soraghan Decl. (dkt. # 8), ¶ 3; Lambert Decl. (dkt. # 9), Exs. A-B.) On May 4, 2022, a patrol agent determined that he would be detained by the Department of Homeland Security ("DHS") pursuant to 8 U.S.C. § 1226 and 8 C.F.R. Pt. 236, and Petitioner requested review by an immigration judge.[3] (Soraghan Decl., ¶ 4; Lambert Decl., Ex. C.) As an unaccompanied minor, Petitioner was released to the custody of the Office of Refugee Resettlement ("ORR") in the Department of Health and Human Services. (Soraghan Decl., ¶ 4.)

On June 14, 2022, the ORR released Petitioner into the care of his brother pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"). (Lambert Decl., Ex. E.) No conditions or check-in requirements were imposed, and no immigration court hearing was set. (Francisco Decl., ¶ 2.) Petitioner has since lived with his brother and other family members in Spokane, Washington. (*Id.*, ¶ 3.) He began attending high school in fall 2022 and is scheduled to graduate at the end of the current school year. (*Id.*)

Through counsel, Petitioner filed a Form I-360 petition for Special Immigrant Juvenile ("SIJ") status with U.S. Citizenship and Immigration Services ("USCIS") on December 21, 2023. USCIS approved the petition on January 30, 2024, granting Petitioner deferred action for four years. (Francisco Decl., ¶ 4; Kang Decl. (dkt. # 3), Ex. A; Soraghan Decl., ¶ 6.) In April

---

[3] Officer Soraghan states in a declaration that Petitioner was "processed for" a Notice to Appear but "it was not filed in immigration court." (Soraghan Decl., ¶ 3.)

ORDER - 2

2024, Petitioner was granted employment authorization and began working. (Kang Decl., Ex. B; *see* Francisco Decl., ¶ 10.) In May 2024, Petitioner submitted a Form I-589 asylum application to USCIS. (*Id.*, Ex. C; Francisco Decl., ¶ 4.)

Sometime in April 2025, ICE Officer Jason C. McIntosh notified Petitioner of an in-person check-in at the ICE Spokane Field Office on April 18, 2025. (Francisco Decl., ¶ 5.) Petitioner's counsel contacted Officer McIntosh to explain Petitioner's status and to request cancellation of the check-in. (*Id.*) On April 17, 2025, Petitioner received a text message scheduling a new appointment for July 25, 2025. (*Id.*) He appeared at the appointed time, but the office was closed and ICE told him to return for a check-in on August 20, 2025. (*Id.*, ¶ 6.) He again appeared at the appointed time, with his attorney, and was told to return the next day because "the system wasn't working[.]" (*Id.*, ¶ 7.)

When Petitioner returned the next day, an officer instructed him in Spanish, which he does not understand well, to download the "SmartLINK" application on his phone and to send a photo every Wednesday after receiving an alert, or manually if no alert appeared. (Francisco Decl., ¶¶ 8-9.) He was shown a calendar in the application that would display any appointments. (*Id.*, ¶ 9.) Petitioner states that he complied with these instructions to the best of his ability. (*Id.*, ¶ 10.)

In August 2025, Petitioner noticed a video call on the SmartLINK calendar scheduled for "4/9/2025," which his immigration attorney explained meant September 4, 2025. (Francisco Decl., ¶ 11.) He waited for the video call as instructed but did not receive a call, and the application did not allow him to initiate one. (*Id.*, ¶ 12.) The calendar then showed the next video call scheduled for October 30, 2025. (*Id.*) At the appointed time, he received a brief call and answered a few questions. (*Id.*, ¶ 13.)

ORDER - 3

The SmartLINK calendar showed an in-person appointment scheduled for February 19, 2026. (Francisco Decl., ¶ 14.) The day before, Officer McIntosh called Petitioner and told him that the appointment was moved to February 26, 2026, due to staffing issues. (*Id.*, ¶ 15.)

On February 26, 2026, Petitioner appeared for the rescheduled appointment. While his attorney briefly stepped outside to make a phone call, Petitioner was detained, handcuffed, and taken to the Northwest ICE Processing Center in Tacoma, Washington, where he remains. (Francisco Decl., ¶¶ 16-19; Soraghan Decl., ¶¶ 7, 11.) ICE's Form I-213 record of the arrest states that Petitioner "had yet to be served a Notice to Appear but was required to participate in Alternatives to Detention (ATD)." (Lambert Decl., Ex. F.) This is the sole reference in the record to ATD. A Notice to Appear was issued the same day, charging Petitioner with being present in the United States without being admitted or paroled and ordering him to appear before an immigration judge on March 9, 2026. (*Id.*, Ex. H.)

On March 3, 2026, Petitioner filed a motion to terminate proceedings with the immigration court. (Soraghan Decl., ¶ 9.) He filed the instant habeas petition on March 16, 2026. (Dkt. # 1.)

On March 18, 2026, an immigration judge denied Petitioner's motion to terminate and ordered the parties to "coordinate an expeditious adjudication of the pending Form I-589[.]" (*Id.*; Lambert Decl., Ex. I.) ICE submitted a request to USCIS, which remains pending, to expedite processing of Petitioner's I-589. (Soraghan Decl., ¶ 9.) Petitioner's next immigration court hearing is scheduled for April 16, 2026. (*Id.*, ¶ 10.)

## II.    DISCUSSION

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v.*

ORDER - 4

*Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner contends that his redetention without written notice and an opportunity to be heard before a neutral decisionmaker violates due process. (Dkt. # 1, ¶¶ 67-70.) Respondents argue that he is subject to mandatory detention and that no additional process is required. (Dkt. # 7 at 3-5.)

### A.   Detention Authority

Respondents rely on out of circuit authority to argue that because Petitioner is an "applicant for admission" as defined in 8 U.S.C. § 1225(a), he is therefore "seeking admission" within the meaning of 8 U.S.C. § 1225(b)(2)(A) and must be detained pending removal proceedings. (Dkt. # 7 at 3-5 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026); *Avila v. Bondi*, 2026 WL 819258, at *3 (8th Cir. Mar. 25, 2026)).)

Where applicable, § 1225(b) "mandate[s] detention of [noncitizens] throughout the completion of applicable proceedings[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). Where § 1225(b) does not apply, § 1226(a) provides the "default rule," allowing discretionary detention of noncitizens "already present in the United States." *Id.* at 303.

Respondents' own records confirm that, in 2022, Petitioner was issued a Warrant for Arrest pursuant to § 1226 and a detention decision was made under the discretionary framework of § 1226. (Lambert Decl., Exs. B-C.) Respondents' belated efforts to recharacterize his status under § 1225 and their reliance on § 1225(b)(2)(A), as interpreted by *Buenrostro-Mendez* and *Avila*, is unavailing. The Fifth and Eighth Circuits' decisions are not binding on this Court, and

ORDER - 5

this Court joins others in declining to adopt Respondents' expansive construction of § 1225(b)'s mandatory detention framework. *See*, *e.g.*, *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1324 (W.D. Wash. Sept. 30, 2025) (rejecting the government's position that § 1225(b) applies to all noncitizens not admitted and declining to treat long-present noncitizens as subject to that scheme); *P.T. v. Hermosillo*, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025). In any event, even if § 1225 were applicable here, "statutory authority to detain does not obviate Respondents' obligation to comply with due process." *Telenchana v. Hermosillo*, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026).

### B.　　Redetention

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

#### 1.　　Private Interest

Petitioner's interest in remaining free from physical confinement after nearly four years of release, nearly all of that time without conditions, is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D.

ORDER - 6

Wash. Sept. 12, 2025). Respondents acknowledge that this significant liberty interest weighs in Petitioner's favor. (Dkt. # 7 at 8.)

### 2.    Risk of Erroneous Deprivation

The risk of erroneous deprivation weighs heavily in Petitioner's favor where, as here, the reasons given for redetention are unclear and, in important respects, unsupported or contradicted by the record. Officer Soraghan's declaration, explaining the reasons for Petitioner's redetention, states:

> On or about February 26, 2026, Petitioner was detained by ERO Spokane based upon the execution of a charging document to initiate removal proceedings against the Petitioner and due to the Petitioner lacking immigration status and being removable from the United States – Petitioner violated his [Alternatives to Detention ("ATD")] conditions by missing required biometrics and office appointments with ICE on December 20, 2023, July 25, 2025, October 2, 2025, November 20, 2025, December 17, 2025, December 31, 2025, January 6, 2026, and January 12, 2026. His Order of Recognizance was revoked. On or about February 26, 2026, Petitioner was served a Notice to Appear by ERO Spokane, pursuant to Section 212(a)(6)(A)(i) of the INA. Petitioner stated that he has a fear of return to Guatemala.

(Soraghan Decl., ¶ 7.) Initiation of removal proceedings is not, by itself, a basis for detention; to the extent the reference to the charging document is intended to implicate § 1225(b)'s mandatory detention, that section does not apply here for the reasons already discussed. Officer Soraghan also refers to an "Order of Recognizance," but the record contains no such order, no documentation of its purported revocation, and no contemporaneous notice of ATD conditions or violations beyond the brief notation in the Form I-213 arrest record. (*See* Lambert Decl., Ex. F at 3-4.)

In their return, Respondents argue that the alleged ATD violations provided a reasonable basis for arrest without notice. (Dkt. # 7 at 9.) They principally rely on *Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025), where the district court ordered a

ORDER - 7

post-deprivation hearing because ATD violations that were "not obviously pretextual" made it at least arguable that providing "notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."

*Martinez Hernandez* offers limited guidance here. Petitioner was released in 2022 without conditions, and the record does not reflect the later imposition of conditions or any clear enrollment in ATD before his redetention. (*See id.*, Lambert Decl., Ex. F at 3.) Moreover, to the extent ATD conditions may have been imposed, Petitioner's declaration describes his efforts to comply. The record does not show that ICE informed Petitioner of the alleged violations, allowed him to correct or explain them, or provided any opportunity to contest the factual basis for redetention before revoking his release. The second *Mathews* factor therefore weighs in Petitioner's favor.

### 3.    Governmental Interest

Although the government has legitimate interests in enforcing the immigration laws and ensuring appearance at proceedings, Respondents identify no concrete way in which providing a short, pre-deprivation custody hearing before redetention would materially impede those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). On this record, Respondents have not shown exigent circumstances—such as an immediate, specific danger or imminent flight—that would make pre-deprivation process impracticable.

In sum, the *Mathews* factors strongly favor Petitioner. Habeas relief is therefore warranted. Given the lack of lawful process at the outset of detention and the absence of exigent

ORDER - 8

circumstances, release is the appropriate and constitutionally required remedy. This conclusion aligns with a broad consensus among district courts. *See*, *e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (Where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

Petitioner also seeks a permanent injunction barring any future redetention without notice and a hearing at which the government must prove, by clear and convincing evidence, that he is a flight risk or a danger to the community and that no alternatives would mitigate those risks. (Dkt. # 1 at 19.) A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see Torres v. Hermosillo*, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026). The record shows that Petitioner was redetained without constitutionally adequate process, but it does not establish a specific, real, and immediate threat that he will again be redetained without due process. Nor does the petition address the requirements for permanent injunctive relief under *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). His request for permanent injunctive relief is therefore denied.

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)   Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(a)   Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

ORDER - 9

(b)    Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2)    Petitioner's request for permanent injunctive relief is DENIED without prejudice.

(3)    The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 2nd day of April, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 10